UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL D. COHEN,

                           *Petitioner*,

v.

WILLIAM BARR, in his official capacity as
Attorney General of the United States,
MICHAEL CARVAJAL, in his official
capacity as Director of the Bureau of Prisons,
and JAMES PETRUCCI, in his official
capacity as Warden of the Federal Correctional
Institution, Otisville,

                           *Respondents*.

No. 20 Civ. 5614

**UNOPPOSED MOTION FOR LEAVE TO FILE BRIEF OF *AMICI CURIAE* FIRST
AMENDMENT SCHOLARS IN SUPPORT OF PETITIONER'S EMERGENCY
MOTION FOR A TEMPORARY RESTRAINING ORDER**

The undersigned counsel represent ten law professors—listed below—who specialize in

constitutional law and, in particular, the First Amendment. On their behalf, counsel respectfully

request leave to file the attached brief in support of Petitioner's Emergency Motion for a

Temporary Restraining Order. Counsel for both Petitioner and Respondents have informed us

that they do not oppose the filing of the proposed amicus brief.[*]

"Federal courts have discretion to permit participation of amici where such participation

will not prejudice any party and may be of assistance to the court." *Strougo v. Scudder*, No. 96-

cv-2136, 1997 WL 473566, at *3 (S.D.N.Y. Aug. 18, 1997). There is no prejudice to the

parties—indeed, they do not object to the filing of this brief. And *Amici* have considerable

---

[*] *Amici* affirm that no counsel for a party authored this brief in whole or in part and that
no person other than *Amici* or their counsel made any monetary contributions intended to fund
the preparation or submission of this brief.

expertise on the legal issues confronting this Court. They seek to aid the Court's consideration of the First Amendment issues raised by Mr. Cohen. *Amici* have dedicated their academic careers to First Amendment scholarship. Through their teaching, research, and publishing, *Amici* seek to educate the legal community, policymakers, and the public about First Amendment history and precedent, and the critical role of the First Amendment in the formation and preservation of American democracy. *Amici* submit this brief because they are deeply concerned about the blatant disregard for First Amendment rights and values displayed in the treatment of Mr. Cohen. In particular, *Amici* seek to underscore the extent and significance of the apparent violation of Mr. Cohen's First Amendment rights, as well as to inform the Court about the ways in which this Administration's prior course of conduct buttresses his claim.

For the foregoing reasons, the First Amendment scholars listed below respectfully request leave to participate as *amici curiae* in these proceedings. *Amici* have included as Exhibit A to this motion a copy of their proposed brief, and are filing a proposed order with this motion.

Jack Balkin
Knight Professor of Constitutional Law and the First Amendment
Yale Law School[*]

Roy S. Gutterman
Director,  Tully Center for Free Speech
Syracuse University[*]

Jane E. Kirtley
Silha Professor of Media Ethics and Law
Director, Silha Center for the Study of Media Ethics and Law
University of Minnesota[*]

Heidi Kitrosser
Robins Kaplan Professor of Law
University of Minnesota[*]

Genevieve Lakier
Assistant Professor Law and Herbert & Marjorie Teaching Scholar
The University of Chicago School of Law[*]

Lyrissa Lidsky
Dean & Judge C.A. Leedy Professor of Law
University of Missouri School of Law[*]

Gregory P. Magarian
Thomas and Karole Green Professor of Law
Washington University in St. Louis School of Law[*]

Burt Neuborne
Norman Dorsen Professor of Civil Liberties
Founding Legal Director Emeritus, Brennan Center for Justice
New York University School of Law[*]

Jonathan Peters
Associate Professor, College of Journalism and Mass Communication
Affiliate Professor, School of Law
The University of Georgia[*]

Geoffrey R. Stone
Edward H. Levi Distinguished Service Professor of Law
The University of Chicago[*]


[*] *Amici*'s institutional affiliations and titles are listed for identification purposes only.


Dated: July 21, 2020                        Respectfully submitted,

                              By:  /s/ John Langford
                                   John Langford (JL-2367)
                                   THE PROTECT DEMOCRACY PROJECT, INC.
                                   555 W. 5th St.
                                   Los Angeles, CA 90013
                                   Telephone: (202) 579-4582
                                   Fax: (929) 777-8428
                                   Email: john.langford@protectdemocracy.org

                                   Kristy Parker
                                   THE PROTECT DEMOCRACY PROJECT, INC.
                                   2020 Pennsylvania Avenue., NW, #163
                                   Washington, DC 20006
                                   Telephone: (202) 849-9307
                                   Fax: (929) 777-8428
                                   Email: kristy.parker@protectdemocracy.org

Ben Berwick
THE PROTECT DEMOCRACY PROJECT, INC.
15 Main St., Suite 312
Watertown, MA 02472
Telephone: (202) 579-4582
Fax: (929) 777-8428
Email: ben.berwick@protectdemocracy.org

*Counsel for Amici Curiae*

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL D. COHEN,

                *Petitioner*,

v.

WILLIAM BARR, in his official capacity as
Attorney General of the United States,
MICHAEL CARVAJAL, in his official
capacity as Director of the Bureau of Prisons,
and JAMES PETRUCCI, in his official
capacity as Warden of the Federal Correctional
Institution, Otisville,

                *Respondents*.

No. 20 Civ. 5614

**BRIEF OF *AMICI CURIAE* FIRST AMENDMENT SCHOLARS
IN SUPPORT OF PETITIONER'S EMERGENCY MOTION FOR A TEMPORARY
RESTRAINING ORDER**

Ben Berwick
THE PROTECT DEMOCRACY PROJECT, INC.
15 Main St.
Suite 312
Watertown, MA 02472
Telephone: (202) 579-4582
Fax: (929) 777-8428
Email: ben.berwick@protectdemocracy.org

John Langford (JL-2367)
THE PROTECT DEMOCRACY PROJECT, INC.
555 W. 5th St.
Los Angeles, CA 90013
Telephone: (202) 579-4582
Fax: (929) 777-8428
Email: john.langford@protectdemocracy.org

Kristy Parker
THE PROTECT DEMOCRACY PROJECT, INC.
2020 Pennsylvania Avenue., NW, #163
Washington, DC 20006
Telephone: (202) 849-9307
Fax: (929) 777-8428
Email: kristy.parker@protectdemocracy.org

*Counsel for Amici Curiae*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ i

TABLE OF AUTHORITIES ........................................................................................................ ii

INTERESTS OF *AMICI CURIAE* ............................................................................................. 1

INTRODUCTION ........................................................................................................................ 2

ARGUMENT ............................................................................................................................... 3

    I.   Forcing Mr. Cohen To Forgo His Right To Speak To Remain Out of Prison Is A
        Blatant Violation of The First Amendment ....................................................................... 3

    II.  Mr. Cohen's Allegations Are Buttressed by The Administration's Disparate
        Treatment of Its Allies And Past Efforts To Silence Critics .............................................. 7

CONCLUSION ............................................................................................................................ 9

# TABLE OF AUTHORITIES

**Cases**

*Bacon v. Phelps*,
  961 F.3d 533 (2d Cir. 2020)...................................................................................... 5

*Branzburg v. Hayes*,
  408 U.S. 665 (1972)............................................................................................... 4

*Burns v. Martuscello*,
  890 F.3d 77 (2d Cir. 2018)....................................................................................... 4

*Citizens United v. Fed. Election Comm'n*,
  558 U.S. 310 (2010)............................................................................................... 4

*First Nat'l Bank of Boston v. Bellotti*,
  435 U.S. 765 (1978)............................................................................................... 3

*Hartman v. Moore*,
  547 U.S. 250 (2006)............................................................................................... 4

*Kleindienst v. Mandel*,
  408 U.S. 753 (1972)............................................................................................... 3

*Minneapolis Star & Tribune Co. v. Minnesota Com'r of Revenue*,
  460 U.S. 575 (1983)............................................................................................... 4

*Morrison v. Lefevre*,
  592 F. Supp. 1052 (S.D.N.Y. 1984) ....................................................................... 5

*Neb. Press Ass'n v. Stuart*,
  427 U.S. 539 (1976)............................................................................................... 3

*Pell v. Procunier*,
  417 U.S. 817 (1974)............................................................................................ 4, 5

*Perry v. Sindermann*,
  408 U.S. 593 (1972)............................................................................................... 5

*Rosenberger v. Rector & Visitors of Univ. of Virginia*,
  515 U.S. 819 (1995)............................................................................................ 4, 7

*Simon & Schuster, Inc. v. Members of the Crime Victims Board*,
  502 U.S. 105 (1991)............................................................................................... 6

*Sobell v. Reed*,
  327 F. Supp. 1294 (S.D.N.Y. 1971) ........................................................................ 6

*Thornburgh v. Abbott*,
  490 U.S. 401 (1989)............................................................................................... 5

*Turner v. Safley*,
  482 U.S. 78 (1987)........................................................................................... 4, 5, 6

## INTERESTS OF *AMICI CURIAE*

*Amici curiae* are law professors who specialize in constitutional law and, in particular, the First Amendment. They have dedicated their academic careers to First Amendment scholarship. Through their teaching, research, and publishing, *amici* seek to educate the legal community, policymakers, and the public about First Amendment history and precedent, and the critical role of the First Amendment in the formation and preservation of American democracy.

*Amici* submit this brief because they are deeply concerned about the blatant disregard for First Amendment rights and values displayed in the treatment of Mr. Cohen. *Amici* seek to aid the Court's consideration of the First Amendment issues raised by Mr. Cohen. In particular, *Amici* seek to underscore the extent and significance of the apparent violation of Mr. Cohen's First Amendment rights, as well as to inform the Court about the ways in which this Administration's prior course of conduct buttresses his claim.

Jack Balkin
Knight Professor of Constitutional Law and the First Amendment
Yale Law School[*]

Roy S. Gutterman
Director, Tully Center for Free Speech
Syracuse University[*]

Jane E. Kirtley
Silha Professor of Media Ethics and Law
Director, Silha Center for the Study of Media Ethics and Law
University of Minnesota[*]

Heidi Kitrosser
Robins Kaplan Professor of Law
University of Minnesota[*]

Genevieve Lakier
Assistant Professor Law and Herbert & Marjorie Teaching Scholar
The University of Chicago School of Law[*]

Lyrissa Lidsky
Dean & Judge C.A. Leedy Professor of Law
University of Missouri School of Law[*]

Gregory P. Magarian
Thomas and Karole Green Professor of Law
Washington University in St. Louis School of Law[*]

Burt Neuborne
Norman Dorsen Professor of Civil Liberties
Founding Legal Director Emeritus, Brennan Center for Justice
New York University School of Law[*]

Jonathan Peters
Associate Professor, College of Journalism and Mass Communication
Affiliate Professor, School of Law
The University of Georgia[*]

Geoffrey R. Stone
Edward H. Levi Distinguished Service Professor of Law
The University of Chicago[*]

## INTRODUCTION

Michael Cohen alleges in his petition for a writ of habeas corpus that the Bureau of Prisons remanded him to federal prison because he refused to agree to waive his rights to speak to the press, publish, and post on social media. *See, e.g.*, Pet. ¶¶ 40–58, ECF No. 1. Mr. Cohen is a vocal critic of President Trump, and it has been widely reported that he has authored a book on the President and has plans to publish it this fall. *Id.* ¶¶ 16–24, 37–39. Mr. Cohen contends that he was returned to prison and placed in solitary confinement to prevent him from publishing the book and as retaliation for the exercise of his First Amendment rights, *id.* ¶¶ 76–84, and he has moved for a temporary restraining order, ECF No. 4.

*Amici* submit this brief to aid the Court's consideration of Mr. Cohen's motion. If the allegations in Mr. Cohen's petition are true, this is a straightforward First Amendment case: the

---

[*] *Amici*'s institutional affiliations and titles are listed for identification purposes only.

government cannot jail an outspoken critic of the President because he exercised and refused to relinquish his freedom of speech. Furthermore, in considering Mr. Cohen's claims, the Court may take notice of this Administration's disparate treatment of its allies and prior attempts to silence or retaliate against critics of the President. Not only does that context make more plausible Mr. Cohen's contention that he is being punished because of his intent to speak, but it also highlights the need for immediate redress for such a blatant and public violation of the First Amendment. Absent such redress, Mr. Cohen's jailing is likely to have an outsized chilling effect on other critics of the President.

## ARGUMENT

### I.    Forcing Mr. Cohen To Forgo His Right To Speak In Order To Remain Out of Prison Is A Flagrant Violation of The First Amendment

Few propositions of constitutional law are clearer than that the First Amendment prohibits the government to remand Mr. Cohen to jail for refusing to waive his freedom of speech.

Indeed, the government's alleged actions toward Mr. Cohen appear to be a "greatest hits" of First Amendment violations. The location monitoring agreement's provision prohibiting Mr. Cohen from "engaging with the media," publishing, and posting on social media is a clear prior restraint, "the most serious and the least tolerable infringement on First Amendment rights," *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976), violating Mr. Cohen's right to speak as well as the press and public's "right to receive" his speech, *Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972); *see also First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 783 (1978) ("[T]he First Amendment goes beyond protection of the press and the self-expression of individuals to prohibit government from limiting the stock of information from which members of the public may draw."). Moreover, singling out the press as particularly disfavored recipients of Mr.

Cohen's speech interferes with the core constitutional protection for news gathering and renders the provision "presumptively unconstitutional." *Minneapolis Star & Tribune Co. v. Minn. Comm'r of Revenue*, 460 U.S. 575, 585 (1983); *see Branzburg v. Hayes*, 408 U.S. 665, 707–08 (1972); *cf. Pell v. Procunier*, 417 U.S. 817, 831, 833 (1974) (distinguishing the permissible elimination of a "special privilege" accorded the press from impermissible "discrimination against free press access"). On top of that, the government's decision to impose these conditions on Mr. Cohen, in particular, and to remand him to prison because he refused to agree to those conditions amounts to an unconstitutional "reprisal for protected speech," *Hartman v. Moore*, 547 U.S. 250, 256 (2006), and constitutionally impermissible "viewpoint discrimination," *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995). And, to top it all off, the location monitoring agreement's restrictions on speech would prevent Mr. Cohen from publicly discussing a President who is running for reelection, speech to which the First Amendment "has its fullest and most urgent application," *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 339 (2010).

Nor does Mr. Cohen's status as a convicted criminal serving his sentence alter the analysis. Individuals do not lose their First Amendment rights when they are convicted of a crime and transferred to the custody of the Bureau of Prisons. *E.g.*, *Turner v. Safley*, 482 U.S. 78, 84 (1987); *Burns v. Martuscello*, 890 F.3d 77, 86 (2d Cir. 2018). While prisoners' First Amendment rights may no doubt be curtailed, only "neutral" regulations "reasonably related to legitimate penological interests" pass constitutional muster. *Turner*, 482 U.S. at 89–90; *Pell*, 417 U.S. at 822.[1] In order to satisfy the "neutrality" requirement, "the regulation or practice in

---

[1] We note that certain aspects of the *Turner* analysis are likely not applicable to Mr. Cohen's retaliation claim, as this case is more akin to a "single-incident case" than a case

question must further an important or substantial governmental interest unrelated to the suppression of expression." *Thornburgh v. Abbott*, 490 U.S. 401, 415 (1989).

The requirement that infringements of prisoners' First Amendment rights be in furtherance of "neutral" and "legitimate" penological interests recognizes that even though the government has broad latitude over prison administration, "there are some reasons upon which the government may not rely" in making decisions. *Perry v. Sindermann*, 408 U.S. 593, 597 (1972). The government has wide discretion over prisoner placement and may choose to authorize or revoke home confinement for many reasons; it may not, however, deny an individual the benefit of home confinement "on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech," *id.*; *see, e.g.*, *Morrison v. Lefevre*, 592 F. Supp. 1052, 1071 (S.D.N.Y. 1984) ("Even though a [prisoner] has no 'right' [to remain in the general prison population] and even though the government may deny him [general custody status] for any number of reasons, there are some reasons upon which the government may not rely." (quoting *Perry*, 408 U.S. at 597) (alterations in original)).

Courts have found that the government has a legitimate and neutral penological interest in preventing "violent episode[s]" in prison, *Pell*, 417 U.S. at 831; preventing felons from "spur[ring]" one another to "criminal behavior," *Turner*, 482 U.S. at 91; controlling gang activity in prison, *id.* at 92; and preventing speech that is detrimental "to the security, good order, or discipline of [a prison]," *Thornburgh*, 490 U.S. at 416; *see Bacon v. Phelps*, 961 F.3d 533, 544 (2d Cir. 2020) (identifying prohibitions of "sexual proposals" and "threats" as permissible to prevent the undermining of "prison discipline"). But we are aware of no federal court upholding

---

challenging a generally applicable policy or regulation. *Burns v. Martuscello*, 890 F.3d 77, 86 (2d Cir. 2018); *see id.* at 86–88.

a restriction on inmates' speech on grounds akin to those offered here—that permitting the speech would allow Mr. Cohen to "glamoriz[e] or bring[] publicity to [his] status as a sentenced inmate serving a custodial term in the community." Pet. ¶ 41, ECF No. 1. We think it self-evident that no court could or should accept such a justification for restricting an individual's otherwise clearly constitutionally-protected speech.[2]

Instead, courts have consistently invalidated similar efforts to censor persons in the criminal justice system, even where the government offered far more compelling reasons for censorship than those offered here. For example, in *Simon & Schuster, Inc. v. Members of the Crime Victims Board*, the Supreme Court unanimously invalidated a New York statute aimed at preventing convicted felons from writing about their crimes in ways that financially benefitted them. 502 U.S. 105 (1991). The Court acknowledged that states have a compelling interest in ensuring that victims are compensated by those who harm them, but it held that New York's "Son of Sam" statute prohibiting felons from profiting from of any work referencing their crimes was overbroad. *Id.* at 118. And in *Sobell v. Reed*, a court in this District invalidated a parole board's efforts to prohibit an individual on supervised release from communicating with Communists, even though he had been convicted of transferring classified information about the atomic bomb to the Soviet Union from 1944–1950. 327 F. Supp. 1294 (S.D.N.Y. 1971). The government's asserted interest here—to prevent Mr. Cohen from "glamorizing" his status as an individual on home confinement—is not compelling. Indeed, it runs directly counter to the

---

[2] Even if preventing prisoners from "glamorizing or bringing publicity to their status as a sentenced inmate serving a custodial term in the community" was a neutral and legitimate penological interest, a blanket media ban is plainly an "exaggerated response" to the government's concerns, given the availability of narrower alternatives. *Turner*, 482 U.S. at 90.

Supreme Court's recognition that states have no interest in prohibiting felons' speech "out of solicitude for the sensibilities of readers." *Simon & Schuster, Inc.*, 502 U.S. at 118.

## II. Mr. Cohen's Allegations Are Buttressed by The Administration's Disparate Treatment Of Its Allies And Past Efforts to Silence Critics

Given the obvious unconstitutionality of jailing someone because they refuse to relinquish their First Amendment rights, it is likely that the government will offer alternative explanations for its actions toward Mr. Cohen. In assessing those explanations, the Court may take into account past conduct by this Administration, which buttresses Mr. Cohen's allegations in two important respects.

*First*, the treatment of Mr. Cohen—who has partially cooperated with federal prosecutors,[3] testified in Congress,[4] and appears poised to continue to share what he knows with the press and the public—stands in stark contrast to the favorable treatment afforded others who refused to provide information about the President.[5] Of course, the government is not permitted to treat individuals differently based on the content of their speech or their differing viewpoints. *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828–29 (1995).

---

[3] *See* Benjamin Weiser, *Michael Cohen Wanted to Cooperate in His Own Way. Prosecutors Had Other Ideas.*, N.Y. Times (Dec. 9, 2018), https://www.nytimes.com/2018/12/09/nyregion/michael-cohen-sentencing.html.

[4] *See* Testimony of Michael D. Cohen, Committee on Oversight and Reform, U.S. House of Representatives (Feb. 27, 2019), *available at* https://www.politico.com/f/?id=00000169-2d31-dc75-affd-bfb99a790001.

[5] *See, e.g.*, Statement for the Record, Assistant United States Attorney Aaron Zelinsky, House Judiciary Committee Hearing (June 24, 2020), *available at* https://judiciary.house.gov/uploadedfiles/zelinsky_opening_statement_hjc.pdf?utm_campaign=4024-519; Donald J. Trump, *Executive Grant of Clemency*,https://www.justice.gov/pardon/page/file/1293796/download; Br. for the Court Appointed *Amicus Curiae*, *United States v. Michael Flynn*, No. 1:17-cr-232-EGS (D.D.C. June 10, 2020), ECF No. 223-2.

*Second*, this Administration has repeatedly targeted other perceived critics for adverse treatment. It has, for example, revoked the press passes and security clearances of individual journalists and media commentators who it viewed as overly critical of the President,[6] blocked the President's critics from his Twitter account,[7] and taken steps to punish social media companies that fact-check the President.[8] And particularly relevant to Mr. Cohen's allegations, President Trump, his Administration, his family, and his campaign have repeatedly attempted to prevent the publication of books in which President Trump is negatively portrayed. With President Trump's encouragement, the Trump Campaign sued former White House staffer Omarosa Newman and Cliff Sims after they published books critical of the Administration, alleging that Newman and Sims violated the Campaign's nondisclosure agreement.[9] The Trump Administration used a protracted classified review process to delay the publication of a book by former National Security Adviser John Bolton.[10] When that didn't work, the Justice Department

---

[6] *See, e.g.*, *PEN Am. Ctr., Inc. v. Trump*, No. 1:18-cv-9433-LGS (S.D.N.Y.); *Karem v. Trump*, 960 F.3d 656 (D.C. Cir. 2020); Tr. of Mot. Hr'g, *Cable News Network, Inc. v. Trump*, No. 18-2610 (D.D.C. Nov. 16, 2018), ECF No. 22; David Jackson, *Donald Trump says he may revoke press credentials for other reporters, not just CNN's Jim Acosta*, USA Today (Nov. 9, 2018), https://www.usatoday.com/story/news/politics/2018/11/09/donald-trump-threatens-other-reporters-white-house-press-passes/1942013002; Julie Hirschfeld Davis & Michael D. Shear, *Trump Revokes Ex-C.I.A. Director John Brennan's Security Clearance*, N.Y. Times (Aug. 15, 2018), https://www.nytimes.com/2018/08/15/us/politics/john-brennan-security-clearance.html; Julie Hirschfeld Davis & Julian E. Barnes, *Trump Weighs Stripping Security Clearances From Officials Who Criticized Him*, N.Y. Times (July 23, 2018), https://www.nytimes.com/2018/07/23/us/politics/trump-security-clearances.html.

[7] *Knight First Amendment Inst. at Columbia Univ. v. Trump*, 928 F.3d 226 (2d Cir. 2019).

[8] Donald J. Trump (@realDonaldTrump), Twitter (July 10, 2020, 8:49 AM), https://twitter.com/realDonaldTrump/status/1281616586273468416.

[9] *See* Compl., *Sims v. Trump*, 1:19-cv-00345 (D.D.C. Feb. 11, 2019), ECF No. 1; Scott Horsley, *Trump Campaign Targets Omarosa Manigault Newman Over Tell-All Book*, NPR (Aug. 14, 2018), https://www.npr.org/2018/08/14/638551941/trump-campaign-targets-omarosa-manigault-newman-over-tell-all-book.

[10] *See* Chuck Cooper, *The White House vs. John Bolton*, Wall St. J. (June 10, 2020), https://www.wsj.com/articles/the-white-house-vs-john-bolton-11591813953.

attempted to restrain the book's publisher from distributing the book for sale, a move the D.C. District Court rejected.[11] President Trump's brother likewise launched a failed attempt to restrain the publication of a book by his niece, Mary L. Trump, after President Trump claimed she was barred from speaking or writing about him by a nondisclosure agreement.[12] This pattern of conduct lends credence to Mr. Cohen's allegations that he was remanded to jail because of his attempts to exercise his First Amendment rights and, in particular, his plan to publish a book that is critical of the President. If that is indeed what happened here, it is a violation of the First Amendment that calls for immediate relief.

## CONCLUSION

Mr. Cohen's allegations strongly suggest that he is currently in prison because he refused to agree not to publish a book critical of the President, or to refrain from communicating with the press. Those allegations are reinforced by this Administration's prior course of conduct. *Amici* submit this brief to aid the Court's consideration of whether to grant immediate redress for what appears to be a clear violation of Mr. Cohen's First Amendment rights and those of the press and the public.

Dated: July 21, 2020                          Respectfully submitted,

By: /s/ John Langford
John Langford (JL-2367)
THE PROTECT DEMOCRACY PROJECT, INC.
555 W. 5th St.
Los Angeles, CA 90013
Telephone: (202) 579-4582
Fax: (929) 777-8428
Email: john.langford@protectdemocracy.org

---

[11] Mem. Op., *United States v. Bolton*, No. 1:20-cv-1580 (RCL) (D.D.C. June 20, 2020), ECF No. 27.

[12] Decision and Order, *Trump v. Trump*, Index No. 22020-51585 (N.Y. Sup. Ct. July 13, 2020), NYSCEF No. 136.

Kristy Parker
THE PROTECT DEMOCRACY PROJECT, INC.
2020 Pennsylvania Avenue., NW, #163
Washington, DC 20006
Telephone: (202) 849-9307
Fax: (929) 777-8428
Email: kristy.parker@protectdemocracy.org

Ben Berwick
THE PROTECT DEMOCRACY PROJECT, INC.
15 Main St., Suite 312
Watertown, MA 02472
Telephone: (202) 579-4582
Fax: (929) 777-8428
Email: ben.berwick@protectdemocracy.org

*Counsel for Amici Curiae*[13]

---

[13] *Amici* affirm that no counsel for a party authored this brief in whole or in part and that no person other than *Amici* or their counsel made any monetary contributions intended to fund the preparation or submission of this brief.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHAEL D. COHEN,<br><br>                              *Petitioner*,<br><br>v.<br><br>WILLIAM BARR, in his official capacity as Attorney General of the United States, MICHAEL CARVAJAL, in his official capacity as Director of the Bureau of Prisons, and JAMES PETRUCCI, in his official capacity as Warden of the Federal Correctional Institution, Otisville,<br><br>                              *Respondents*. | No. 20 Civ. 5614 |

**[PROPOSED] ORDER ON UNOPPOSED MOTION FOR LEAVE TO FILE BRIEF OF**
***AMICI CURIAE* FIRST AMENDMENT SCHOLARS IN SUPPORT OF PETITIONER'S**
**EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER**

Upon consideration of the motion brought by the proposed *Amici*, it is hereby ORDERED

that leave to file their brief is GRANTED, and the brief attached as Exhibit A to *Amici*'s motion

is deemed filed.

SO ORDERED this _____ day of July, 2020.

_____
Hon. Alvin K. Hellerstein
United States District Judge