AUDREY STRAUSS
Acting United States Attorney for the
Southern District of New York
Attorney for Respondents
By:     ALLISON ROVNER
        Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2691
Facsimile: (212) 637-2686
E-mail: allison.rovner@usdoj.gov

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHAEL COHEN,<br><br>                   Petitioner,<br><br>          v.<br><br>WILLIAM BARR, in his official capacity as Attorney General of the United States, MICHAEL CARVAJAL, in his official capacity as Director of the Bureau of Prisons, JAMES PETRUCCI, in his official capacity as Warden of the Federal Correctional Institution, Otisville,<br><br>                   Respondents. | No. 20 Civ. 5614 (AKH) |

**DECLARATION OF ADAM PAKULA**

<u>Introduction</u>

1.      I am a Probation Officer Specialist at the United States Probation Office ("Probation" or "Probation Office") for Southern District of New York. I have worked at the Probation Office since June 2007.

2.      The Probation Office is an arm of the United States District Court, not the executive branch. Typically, the Probation Office supervises individuals who have been sentenced to a term of probation, or who have completed a sentence of imprisonment and are

serving a term of supervised release. Occasionally, the Probation Office provides courtesy supervision of individuals who are still in the custody of the Bureau of Prisons ("BOP"), but who have been placed in home confinement rather than a prison; such supervision is conducted under the Federal Location Monitoring Program ("FLM" or "FLM Program").

3. Because supervision under the FLM Program is less common, I have not supervised any BOP inmates under that program. Michael Cohen would have been my first case under the FLM Program.

4. I submit this declaration in connection with respondents' opposition to petitioner's motion for a temporary restraining order in this case. I base this declaration on my personal knowledge, my review of Probation records to which I have access as part of my duties and responsibilities, and my communications with the employees of Probation and the Bureau of Prisons.

**The Creation of Michael Cohen's FLM Agreement**

5. On or about July 6, 2020, I learned that I would be assigned as the supervising officer for Michael Cohen, who was to be transferred to home confinement and supervised by the Probation Office pursuant to the FLM Program.

6. It was my understanding that, in such cases, the Probation Office, the BOP, and the defendant typically execute an agreement setting forth the terms and conditions by which the Probation Office agrees to provide courtesy supervision of a defendant in the BOP's custody. This FLM agreement is in addition to other standard Probation Office forms typically executed by defendants serving home confinement as a condition of supervised release or probation.

7. As noted, I had not previously supervised any defendants pursuant to the FLM Program. As a result, I did not have a model FLM agreement from one of my own cases to use.

8. Several months earlier, however, I had participated in an informal working group with probation officers from several other districts regarding location monitoring and, in particular, had discussed with them the FLM Program.

9. On May 28, 2020, I received an email from a probation officer in another district who was a part of that informal working group. The email stated, in substance, that the officer had received several requests for supervision of high-profile inmates under the FLM Program; that he had developed terms and conditions to include in an FLM agreement for such cases; and that these terms had been approved by his supervisors and the BOP. A copy of one such agreement was attached to his email. That email and its attachment are attached to this declaration as Exhibit A.

10. On or about July 7, 2020, I drafted the FLM agreement to be used in Cohen's case (the "FLM Agreement"). I used the example included in Exhibit A as the basis for Cohen's agreement, making only minor changes to the language included therein. In particular, the condition relating to Cohen's contact with the media was included in substantially the same form as in the example included in Exhibit A.

11. While I was aware that Cohen was a high-profile inmate, at the time I drafted the FLM Agreement I was not aware that Cohen was writing a book. I drafted the FLM Agreement without input from the BOP or anyone in the executive branch.

12. On or about July 7, 2020, I participated in a conference call with the following individuals: Supervisory U.S. Probation Officer Enid Febus; Assistant Deputy Chief U.S. Probation Officer Ed Johnson; and Patrick McFarland, a Residential Reentry Manager at the BOP.

13. During that call, we reviewed the terms and conditions set forth in the draft FLM Agreement. McFarland stated that he approved of the draft FLM Agreement, including but not limited to the condition relating to Cohen's contact with the media. McFarland later signed the draft agreement and sent the signed copy to the Probation Office. That agreement is attached as Exhibit B.

**The Events of July 9, 2020**

14. On July 9, 2020, Cohen was scheduled to report to the Probation Office in order to complete paperwork associated with the commencement of his placement on home confinement under the FLM Program. Cohen reported to the Probation Office with his attorney Jeffrey Levine, Esq.

15. Cohen, Levine, Supervisory Probation Officer Febus, and I met in Febus's office. Copies of the FLM Agreement were distributed to each participant in the meeting and subsequently reviewed.

16. As we reviewed the FLM Agreement, Cohen was combative. Cohen and his attorney attempted to negotiate the language of nearly every provision of the agreement, and Cohen stated on at least one occasion that he would not sign the agreement.

17. In particular, Cohen raised at least the following objections to the FLM Agreement:

    a. Cohen objected to the first condition of the FLM Agreement, which related to his contact with the media. Cohen stated, in substance, that he was writing a book and that he was going to do that "no matter what happens." Cohen asked that the undersigned say hello to "Mr. Barr," which I understood to be a reference to the Attorney General.

   b. Cohen objected to the second condition of the FLM Agreement, which required that his employment be approved in advance by the BOP and the Probation Office. Cohen posed various hypothetical employment positions and asked whether they would be approved. For example, Cohen asked whether he could appear as a political correspondent on television or the radio.

   c. Cohen objected to the third condition of the FLM Agreement, which prohibited him from contact with convicted felons or anyone under investigation by the U.S. Attorney's Office, noting that he wished to contact individuals he knew at FCI Otisville.

   d. Cohen objected to the fifth condition of the FLM Agreement, arguing that he should be able to do his own grocery shopping.

   e. Cohen objected to the seventh and eighth conditions of the FLM Agreement, arguing that their wording was confusing.

   f. At some point during the conversation, Cohen's attorney objected to Cohen's placement on electronic monitoring, stating, in substance, that it was only for violent criminals.

  18. Given Cohen's intransigence, Supervisory Probation Officer Febus and I decided to contact the BOP to find out how it wished to proceed. Because the Probation Office had agreed to supervise Cohen as a courtesy to the BOP, we viewed this as a decision for the BOP to make. We therefore asked Cohen and Levine to proceed to the waiting area while we contacted the BOP.

  19. Febus and I then called McFarland, the RRM Manager on Cohen's case, and summarized the foregoing, including by stating that Cohen had been argumentative, had attempted to negotiate the conditions of his home confinement, and had refused to sign the FLM

Agreement. McFarland informed us that he would consult with his supervisors and determine how to proceed.

20. McFarland later called us back and informed us that Cohen was going to be remanded. McFarland asked us not to engage with Cohen further. Employees of the United States Marshals Service subsequently took Cohen into custody.

I, ADAM PAKULA, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the above statements are true and correct.

Dated: New York, New York
July 22, 2020

*Adam Pakula*
_____
Adam Pakula
U.S. Probation Officer Specialist
U.S. Probation Office for the
Southern District of New York

6

| | |
|---|---|
| **From:** | Adam Pakula |
| **To:** | McKay, Thomas (USANYS) |
| **Subject:** | FW: FLM |
| **Date:** | Wednesday, July 22, 2020 12:32:13 PM |
| **Attachments:** | ▮▮▮▮▮..docx |

**From:** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
**Sent:** Thursday, May 28, 2020 2:37 PM
**To:** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Adam Pakula ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
**Subject:** FLM

Hey, Fellas.  Hope you are all doing ok.

I have received a few high profile FLM requests since we all last collaborated.

I came up with a list of additional criteria that my brass and the BOP approved as having the potential FLM participant agree to ahead of time (in addition to the FLM conditions).

I reviewed the list over the phone with the offender and then emailed the document to be signed before we would formally agree to FLM.  I think this will help me justify bouncing him out if there's problems.

Sharing with you guys to use if needed and/or as you see fit.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA
PROBATION OFFICE

**MATTHEW R. MACAVOY**
**CHIEF U.S. PROBATION OFFICER**

**FEDERAL OFFICE BUILDING**
**600 ARCH STREET, SUITE 2400**
**PHILADELPHIA, PA   19106-1679**
**215-597-7950**
**FAX: 215-597-8856**

May 27, 2020



RE: Federal Location Monitoring (FLM)

Dear Mr.

As we discussed on May 21, 2020, we are investigating your suitability for participation in the Federal Location Monitoring Program, which would allow for the completion of your custodial sentence (due to terminate on August 1, 2025) to occur at your home, under the monitoring and supervision of the United States Probation Office.

In addition to the FLM program rules that have been forwarded to you, below are a list of additional guidelines you will be expected to comply with and honor during the entire term of FLM (should your application be accepted).   As we discussed, any violation of these rules will result in our office's contact the United States Bureau of Prisons with a request to transfer you out of FLM immediately.

1) No engagement of any kind with the media, including print, tv, film, books, or any other form of media/news.   Prohibition on social media on all such platforms.   No posting on social media and a requirement that you communicate with friends and family to exercise discretion in not posting on your behalf or posting any information about you. The purpose here is to avoid glamorizing or bringing publicity to your status as a sentenced inmate serving a custodial term in the community.
2) Any employment must be approved in advance by the United States Probation Office and United States Bureau of Prisons.   As a guideline, any employment must be fully transparent, fully tax paying, and through a verifiable, independent third party.   Hours of work must be documented and work must be conducted in a "brick and mortar" setting.   No self-employment, consulting, or other type of less visible work will be authorized.
3) Prohibition on contact with any convicted felons.   An exception will be made for your son            allowing a weekly two hour, in person visit to occur at your home.   No other contact of any kind will be permitted.
4) Approval for attendance at one weekly religious service, in addition to holidays (Easter, Christmas, etc.)
5) Food shopping and other regular household shopping to be conducted on your behalf by

FLM
Page Two

    your family members.
6) Approval will be granted for your medical treatment/appointments.
7) Any requests outside of the parameters listed above (work, medical, religious) would be considered "discretionary leave" and will be considered only if the request is of an extraordinary nature.   Such requests will be vetted by the Supervisor of the Location Monitoring Program.

Please review the above FLM parameters.   If you agree to these conditions and guidelines, we ask that you sign and date accordingly below and the investigation will continue to proceed.

Should you have any questions or need for clarification, please contact the undersigned at: (215)

                                                                                        Sincerely,

                                                                                        Senior U.S. Probation Officer

_____
Agree to FLM guidelines as noted in this document


_____
Object to FLM guidelines as noted in this document

# FEDERAL LOCATION MONITORING PROGRAM PARTICIPANT AGREEMENT
(BOP Inmates monitored by The U. S. Probation Office)

**Inmate Name: COHEN, Michael D. Reg# 86067-054**

You have been designated by the Federal Bureau of Prisons (BOP) to participate in the Federal Location Monitoring Program (FLM). This program will allow for the completion of your custodial sentence (**scheduled to terminate on November 21, 2021).** to occur at your home, under the monitoring and supervision of the United States Probation Office for the Southern District of New York.

Below is a list of additional guidelines you will be expected to comply with and honor during the entire term of FLM.  Any violation of these rules will result in our notification to BOP officials which may result in your immediate termination from the FLM program.

**I, Michael D. Cohen, agree to reside at ███████████████████████████████ for the entire term of my FLM.** Said term will be monitored electronically with the use of Radio Frequency (RF) and Home Detention as described in Prob. 61 (RF) which has been reviewed and signed.  In addition, the following terms will guide my participation in FLM.

1)	No engagement of any kind with the media, including print, tv, film, books, or any other form of media/news.  Prohibition from all social media platforms.  No posting on social media and a requirement that you communicate with friends and family to exercise discretion in not posting on your behalf or posting any information about you. The purpose is to avoid glamorizing or bringing publicity to your status as a sentenced inmate serving a custodial term in the community.

2)	Any employment must be approved in advance by the United States Bureau of Prisons and the United States Probation Office.  As a guideline, any employment must be fully transparent, fully tax paying, and through a verifiable, independent third party.  Hours of work must be documented.  A full description of your duties must be submitted by the intended employer in advance of commencement of employment.

3)	You shall not have contact with any convicted felons; or anyone currently under investigation by the U.S. Attorney's Office.

4)	Prior approval for attendance to one weekly religious service, in addition to holidays. A letter from the place of worship may be required.

5)	Food shopping and other regular household shopping errands must be conducted on your behalf by your family members, unless you are residing alone.

6)	Approval will be granted for your medical treatment/appointments, with submission of location of said appointments in advance. Verification will be needed.

7)	Any requests outside of the parameters listed above (work, medical, religious) will be considered "discretionary leave" and will be considered only if the request is of an extraordinary nature.

Such requests will be vetted by the Supervisor and/or designee of the Location Monitoring Program. All request will be based on compliance with the FLM program.

8)	Approval will be granted for you to meet with your attorney, at the attorney's request in advance.

**If you fail to adhere to the Home Detention requirements and/or if you fail to adhere to the guidelines indicated above, the U.S. Probation Office will immediately notify the Bureau of Prisons and will request that your participation in the FLM program be terminated.**

Your signature below acknowledges your acceptance and agreement to the expectations of this document while you are on FLM.

Signed by:                                                                              Signed by:

*PATRICK MCFARLAND*
_____                                          _____

Patrick McFarland                                                                Enid Febus
Residential Reentry Manager, BOP                              Supervisory U.S. Probation Officer


Signed by:                                                                              Signed by:



_____                                          _____

Michael D. Cohen                                                               Adam Pakula
FLM Participant                                                                  U.S. Probation Officer Specialist


                              Date: _____