**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHAEL D. COHEN,<br><br>*Petitioner,*<br><br>v.<br><br>WILLIAM P. BARR, *et al*.,<br><br>*Respondents*. | No. 20 Civ. 5614 |

**CONSENT MOTION OF LAWYERS DEFENDING AMERICAN DEMOCRACY, INC. FOR LEAVE TO FILE A BRIEF AS *AMICUS CURIAE* IN SUPPORT OF THE PETITION AND THE EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER**

Lawyers Defending American Democracy, Inc. ("LDAD") respectfully moves for leave to file a brief as *amicus curiae* in support of the petition and the emergency motion for a temporary restraining order. The parties have kindly consented to this motion.

LDAD is a Massachusetts not-for-profit non-partisan organization. Its purpose is to foster adherence to the Rule of Law. Since its founding in January 2019, LDAD has issued Open Letters and statements calling for adherence by public officials to the Rule of Law and encouraging our fellow lawyers, the leaders of national, state, and local bar associations, and the legal academy to join us in speaking out against threats to the rule of law. LDAD's Open Letters have been signed by over 1500 lawyers, including former federal and state judges, former United States Attorneys, and law school deans and professors from around the country. Our Open Letters and statements are available at https://lawyersdefendingdemocracy.org/statements/. Many signers are members of the New York Bar.

LDAD is currently an *amicus curiae* in litigation over the government's attempt to dismiss the charges in the criminal proceedings against former National Security Advisor Michael T. Flynn. LDAD's motions for leave to file as an *amicus* were granted by both the United States District Court for the District of Columbia and, on Mr. Flynn's mandamus petition, by the United States Court of Appeals for the District of Columbia Circuit. That case is now pending on a petition for rehearing *en banc*.

Mr. Cohen's habeas petition and related TRO papers raise the question whether the government can constitutionally revoke a prisoner's furlough because he did not readily agree to relinquish his right to criticize the President. Such a condition, which confers a personal benefit on a President who is eligible for and actively seeking re-election, directly implicates the Rule of Law in a way that has not before been seen in this country.

Because the participation of LDAD as *amicus curiae* will not prejudice the parties and may be of assistance to the Court, *e.g.*, *Strougo v. Scudder*, No. 96-cv-2136, 1997 WL 473566, at *3 (S.D.N.Y. Aug. 18, 2997) (describing court's discretion to permit participation of *amici*), LDAD respectfully moves for leave to file a brief as *amicus curiae* in support of the petition and the emergency motion for a temporary restraining order. Exhibit A to this motion is a copy of the proposed brief, and LDAD is filing a proposed Order with this motion.

Dated: July 22, 2020

Respectfully submitted,

By: /s/ *Christine H. Chung*

Christine H. Chung (CC-0423)
CHRISTINE H. CHUNG PLLC
14 Murray St., No. 236
New York, NY 10007
(917) 685-0423
christine@thechunglawoffice.com

Eugene R. Fidell*
FELDESMAN TUCKER LEIFER FIDELL LLP
1129 20th St., N.W., Ste. 400
Washington, DC 20036
(202) 256-8675
efidell@ftlf.com

Fred M. Lowenfels*
889 Orienta Ave.
Mamaroneck, NY 10543
(646) 250-8083
fredlowenfel@gmail.com

Evan Falchuk*
429 Wolcott St.
Newton, MA 02466
(617) 564-3482
evan.falchuk@gmail.com

Stanley J. Marcuss*
4616 29th Pl., N.W.
Washington, DC 20008
(202) 256-0470
sjmarcuss@outlook.com

*Attorneys for* Amicus Curiae
*Lawyers Defending American Democracy, Inc.*

* *Members of the New York Bar*

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHAEL D. COHEN, *Petitioner,* v. WILLIAM P. BARR, *et al.*, *Respondents*. | No. 20 Civ. 5614 |

**BRIEF OF LAWYERS DEFENDING AMERICAN DEMOCRACY, INC. AS *AMICUS CURIAE* IN SUPPORT OF THE PETITION FOR A WRIT OF HABEAS CORPUS AND THE EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER**

Eugene R. Fidell*
FELDESMAN TUCKER LEIFER FIDELL LLP
1129 20th St., N.W., Ste. 400
Washington, DC 20036
(202) 256-8675
efidell@ftlf.com

Fred M. Lowenfels*
889 Orienta Ave.
Mamaroneck, NY 10543
(646) 250-8083
fredlowenfel@gmail.com

Evan Falchuk*
429 Wolcott St.
Newton, MA 02466
(617) 564-3482
evan.falchuk@gmail.com

Stanley J. Marcuss*
4616 29th Pl., N.W.
Washington, DC 20008
(202) 256-0470
sjmarcuss@outlook.com

Christine H. Chung (CC-0423)
CHRISTINE H. CHUNG PLLC
14 Murray St., No. 236
New York, NY 10007
(917) 685-0423
christine@thechunglawoffice.com

*Attorneys for* Amicus Curiae
*Lawyers Defending American Democracy, Inc.*

* *Members of the New York Bar*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........ 1

INTEREST OF THE *AMICUS CURIAE* ........ 1

STATEMENT OF THE FACTS ........ 2

ARGUMENT ........ 3

Respondents Violated the First Amendment by Revoking Petitioner's Furlough When He Failed to Relinquish His Right to Criticize President Trump

CONCLUSION ........ 6

# TABLE OF AUTHORITIES

**Cases**

*Mandoli v. Acheson*,
344 U.S. 133 (1952)....................6

*Matter of Cohen,*
170 A.D.3d 30, 95 N.Y.S.3d 68 (1st Dep't 2019) ....................2

*Matter of Trump*,
2020 N.Y. Slip Op. 20146, 2020 WL 3478205
(Surrogate's Ct. Queens County June 25, 2020) ....................5

*Nebraska Press Ass'n v. Stuart*,
427 U.S. 539 (1976)....................5

*New York Times Co. v. United States*,
403 U.S. 713 (1971)....................5

*Roe v. Wade*,
410 U.S. 113 (1973)....................6

*Simon & Schuster v. Members of New York State Crime Victims Bd.*.,
502 U.S. 105 (1991)....................5

*Trop v. Dulles*,
356 U.S. 86 (1958)....................6

*In re Trump*,
958 F.3d 274 (4th Cir. 2020) (en banc) ....................6

*Trump v. Trump*,
Index No. 22020-51585 (Sup. Ct. Dutchess County July 13, 2020) ....................5

**Constitution and Statutes**

U.S. Constitution
art. II, § 1, cl. 7....................6
art. II, § 2, cl. 1....................6
art. II, § 3, cl. 5....................4
amend. 1....................4
amend. 8....................6
amend. 22, § 1....................3

10 U.S.C. § 888 (2018)....................4

18 U.S.C. § 793 (2018) ....................4

18 U.S.C. § 1001 (2018) ....................2

28 U.S.C. § 2241 (2018) ....................3

**Rules**

Fed. R. Evid. 201(b) ....................3

N.Y. Rules of Professional Conduct
R. 1.6 ....................4

**Miscellaneous**

Alexandre Dumas, THE MAN IN THE IRON MASK ....................3

Alan Feuer, *New York Judge Clears Publication of Trump Tell-All*,
THE NEW YORK TIMES, July 13, 2020 ....................5

Edward Everett Hale, *The Man Without a Country*,
THE ATLANTIC (Dec. 1863) ....................6

RESTATEMENT OF THE LAW THIRD, THE LAW GOVERNING LAWYERS
(2000) ....................4

Mary L. Trump, TOO MUCH AND NEVER ENOUGH: HOW MY FAMILY
CREATED THE WORLD'S MOST DANGEROUS MAN (2020) ....................5

## PRELIMINARY STATEMENT

Lawyers Defending American Democracy ("LDAD") has prepared this *amicus* brief because the governmental action of which petitioner complains represents a direct attack on one of the core elements of American democracy: the right to write and speak out freely and without fear of being jailed.

Petitioner is in custody because he did not succumb to a government demand that he not publish a book critical of the President of the United States. Whatever one makes of Mr. Cohen's crimes or his pandemic-related furlough, conditioning his liberty on acquiescence to a governmental gag order is a grave violation of the Constitution. Nor is he the only one harmed. To prohibit anyone – even a convict – from criticizing the President is inimical to the robust debate that is a hallmark of American democracy.

Conditioning liberty on silence is un-American and intolerable. The petition should be granted.

## INTEREST OF THE *AMICUS CURIAE*

LDAD is a Massachusetts not-for-profit non-partisan organization. Its purpose is to foster adherence to the Rule of Law. Since its founding in January 2019, LDAD has issued Open Letters and statements calling for adherence by public officials to the rule of law and encouraging our fellow lawyers, the leaders of national, state, and local bar associations, and the legal academy to join us in speaking out against threats to the rule of law. LDAD's Open Letters have been signed by over 1500 lawyers, including former federal and state judges, former United States Attorneys, and law school deans and professors from around the country. LDAD's Open Letters and statements are available at https://lawyersdefendingdemocracy.org/statements/.

LDAD is currently an *amicus curiae* in litigation over the government's attempt to dismiss the charges in the criminal proceedings against former National Security Advisor Michael T. Flynn. LDAD's motions for leave to file as an *amicus* were granted by both the United States District Court for the District of Columbia and, on Mr. Flynn's mandamus petition, by the United States Court of Appeals for the District of Columbia Circuit. That case is now pending on a petition for rehearing *en banc*.

Mr. Cohen's habeas petition and related TRO papers raise the question whether the government can condition release from confinement on a prisoner's relinquishment of cherished First Amendment rights. Such a condition, which would confer a personal benefit on a President who is eligible for and actively seeking re-election, directly implicates the Rule of Law in a way that has not before been seen in this country.

**STATEMENT OF THE FACTS**

This statement accepts as true the facts set forth in the petition.

Petitioner, a now-disbarred attorney,[1] was convicted in 2018 of offenses under 18 U.S.C. § 1001, tax evasion, campaign finance violations, and other federal crimes and sentenced to prison. He was also fined $100,000, ordered to forfeit $500,000, and directed to pay $1,393,858 in restitution. His prison term has not expired. He was released on furlough because the coronavirus presented a significant threat to his health while incarcerated. While on furlough, the Bureau of Prisons (BOP) demanded that he execute an agreement, as a condition of continued furlough, that would have prevented him from publishing a book he is writing.[2] Petitioner's manuscript is highly

[1] On February 26, 2019, the Supreme Court Appellate Division, First Department, struck petitioner's name from the roll of attorneys and counselors-at-law in the State of New York, *nunc pro tunc* to November 29, 2018. *Matter of Cohen,* 170 A.D.3d 30, 95 N.Y.S.3d 68 (1st Dep't 2019).

[2] It appears that the condition at issue may not be part of BOP's normal furlough conditions. Although it makes no difference in the end, for First Amendment purposes, whether the condition is bespoke, the Court may wish to inquire

unflattering to the President of the United States. Petitioner and his counsel sought to negotiate the terms of the agreement. After consulting higher authorities within the government, BOP officials terminated discussions and took petitioner back into custody. Because of the COVID-19 pandemic, he is in solitary confinement rather than the general prison population. He is let out of his cell for only half an hour per day.

President Trump is eligible to serve a second term, U.S. Const. amend. 22, § 1, and is seeking the 2020 Republican nomination. BOP is part of the Department of Justice. The President appoints both the Attorney General and the Director of BOP, both of whom serve at his pleasure. These are facts of which the Court can take judicial notice. Fed. R. Evid. 201(b).

For purposes of the writ of habeas corpus and 28 U.S.C. § 2241, there is no question that petitioner is in custody.

## ARGUMENT

### RESPONDENTS VIOLATED THE FIRST AMENDMENT BY REVOKING PETITIONER'S FURLOUGH WHEN HE FAILED TO RELINQUISH HIS RIGHT TO CRITICIZE PRESIDENT TRUMP

This case is about extortion. BOP is unconstitutionally attempting to use an inmate's fear of contracting the coronavirus to extract a commitment not to write an unflattering book about the President of the United States.

There are cases where plausible legal arguments can be made in support of agency action that is at least debatable. This is not one. It is hard to imagine a scenario that a reasonable observer would more associate with Alexandre Dumas *père*'s *Man in the Iron Mask* than with actions of the United States Government in the 21st century. It is equally hard to imagine a set of facts more

into this when the petition comes on for hearing tomorrow. If petitioner is being singled out, that would cast grave doubt on BOP's bona fides.

irrational than opportunistically attempting to prevent a vulnerable prisoner from doing while on furlough what agency regulations would clearly permit him to do if he were to remain behind bars. In effect, respondents have perversely weaponized a program that was intended to ensure the health and safety of federal prison inmates, transforming it instead into a means to oppress and selectively silence critics of their Executive Branch superior, whose responsibilities include the duty to "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3, cl. 5.

There are many ways an author may entirely lawfully be deterred from publishing a book. None of them apply here. For example, to disseminate classified information is a crime. 18 U.S.C. § 793 (2018). For commissioned officers of the armed forces, it is a crime to speak contemptuously of the President, other high officials, or Congress. 10 U.S.C. § 888 (2018) (art. 88, UCMJ). Petitioner is not subject to the Uniform Code of Military Justice. Nor is there any suggestion that petitioner knows classified information or that his manuscript includes such information.

A lawyer is subject to certain professional obligations, including the duty to maintain client confidences. *E.g.*, N.Y. Rules of Professional Conduct 1.6, 1.9(c)(2); *see generally* RESTATEMENT OF THE LAW THIRD, THE LAW GOVERNING LAWYERS §§ 60, 68 (2000). Petitioner is no longer an attorney. Hence, he is no longer subject to bar discipline. His former client, President Trump, may have an action against him for damages, and may attempt to obtain injunctive relief to prevent him from divulging information obtained in the course of his prior representation or from privileged communications. As President, however, he does not have a right to enforce the duty of confidentiality that is owed to him in his personal capacity through the powers vested in his subordinates at the BOP.

A person may relinquish the right to publish by contract. It would be surprising if there were a nondisclosure agreement between petitioner and President Trump that would prevent

petitioner from publishing his manuscript, as President Trump has not claimed there is one. But if there is, the President may attempt to enforce it in a court of competent jurisdiction, as his brother sought to do in the case of a book published only a few days ago by the President's niece. *See Trump v. Trump*, Index No. 22020-51585 (Sup. Ct. Dutchess County July 13, 2020), *available at* https://www.gibsondunn.com/wp-content/uploads/2020/07/2020_51585_Robert_S_Trump_v_Mary_L_Trump_et_al_Decision___Order_On_138.pdf?fbclid=IwAR160RuuR2tPCTxamtV1xeZRAnrqw9hi7euZySgpamsOu0KbCBrAqIKVDG0.[3] Here again, however, it is not for BOP to enforce such an agreement.

The government may seek to deprive a person of the right to profit from his own crime by writing a book under a "Son of Sam" law. Even if such a statute were narrowly drafted so as to pass constitutional muster, *see Simon & Schuster v. Members of New York State Crime Victims Bd.*, 502 U.S. 105 (1991), it would have no bearing on cases where the book in question is not about the author's crimes, but about some *other* person's conduct – here, that of the President of the United States. In any event, forcing an author to forgo profits is a far cry from gagging that author *ex ante* as BOP has sought to do for President Trump's benefit. The First Amendment could not be more hostile to prior restraints on freedom of the press. *See, e.g., New York Times Co. v. United States*, 403 U.S. 713 (1971) (Pentagon Papers Case); *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539 (1976).

It is instructive to consider the many possible variations on the theme of BOP's attempted extortion. Suppose it conditioned petitioner's continued COVID-19 furlough on his agreement not: to exercise his First Amendment right "to petition the Government for a redress of grievances"; to

---

[3] *See* Alan Feuer, *New York Judge Clears Publication of Trump Tell-All*, N.Y. Times, July 13, 2020, *available at* https://nyti.ms/3fupp0c. The litigation concerned MARY L. TRUMP, TOO MUCH AND NEVER ENOUGH: HOW MY FAMILY CREATED THE WORLD'S MOST DANGEROUS MAN (2020). *See also Matter of Trump*, 2020 N.Y. Slip Op. 20146, 2020 WL 3478205 (Surrogate's Ct. Queens County June 25, 2020).

seek a pardon or executive clemency, U.S. Const. art. II, § 2, cl. 1; to participate in a peaceful anti-Trump demonstration; to appeal his conviction as provided by law; to seek habeas corpus based on conditions of confinement; to complain of cruel and unusual punishment, U.S. Const. amend. 8; or to worship at a house of worship of his choosing. U.S. Const. amend. 1. Or suppose BOP agreed to extend his humanitarian furlough only on the condition that: he rent space in a Trump Organization property, U.S. Const. art. II, § 1, cl. 7; *see In re Trump*, 958 F.3d 274 (4th Cir. 2020) (en banc); that he leave the country forever, *but see Mandoli v. Acheson*, 344 U.S. 133, 139 (1952) (right to remain in the country as "fundamental attribute" of citizenship);[4] or that he relinquish his American citizenship. *But see Trop v. Dulles*, 356 U.S. 86 (1958). Or suppose BOP insisted either that a prisoner terminate or refrain from terminating a pregnancy. *But see Roe v. Wade*, 410 U.S. 113 (1973).

A reader may respond that these examples are creative but farfetched. It should be possible for Americans to have confidence that they are indeed farfetched. But the facts of this disturbing case suggest otherwise. Who, until this case, could have imagined that federal officials would barter a prisoner's clear right under the First Amendment for either his liberty, his protection from a raging pandemic, or both—where the consequence is a clear political benefit for the Chief Executive?

**CONCLUSION**

This case is not only about petitioner, whose offenses were serious. It is also and, if anything, more urgently, about freedom of speech and the Rule of Law in our country. The petition for a writ of habeas corpus and the emergency motion for petitioner's release should be granted.

---

[4] *Cf.* Edward Everett Hale, *The Man Without a Country*, THE ATLANTIC (Dec. 1863).

Dated: July 22, 2020

Respectfully submitted,

By: /s/ *Christine H. Chung*

Christine H. Chung (CC-0423)
CHRISTINE H. CHUNG PLLC
14 Murray St., No. 236
New York, NY 10007
(917) 685-0423
christine@thechunglawoffice.com

Eugene R. Fidell*
FELDESMAN TUCKER LEIFER FIDELL LLP
1129 20th St., N.W., Ste. 400
Washington, DC 20036
(202) 256-8675
efidell@ftlf.com

Fred M. Lowenfels*
889 Orienta Ave.
Mamaroneck, NY 10543
(646) 250-8083
fredlowenfel@gmail.com

Evan Falchuk*
429 Wolcott St.
Newton, MA 02466
(617) 564-3482
evan.falchuk@gmail.com

Stanley J. Marcuss*
4616 29th Pl., N.W.
Washington, DC 20008
(202) 256-0470
sjmarcuss@outlook.com

*Attorneys for* Amicus Curiae
*Lawyers Defending American Democracy, Inc.*

* *Members of the New York Bar*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHAEL D. COHEN,<br>*Petitioner,*<br>v.<br>WILLIAM P. BARR, *et al*.,<br>*Respondents*. | No. 20 Civ. 5614 |

**[PROPOSED] ORDER**

On consideration of the consent motion of Lawyers Defending American Democracy, Inc. ("LDAD") for leave to file a brief as *amicus curiae* in support of the petition and emergency motion for a temporary restraining order it is, by the Court, this ____ day of __________, 2020, ORDERED that LDAD's motion be, and the same hereby is, GRANTED.

______________________________
Hon. Alvin K. Hellerstein
United States District Judge