UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MICHAEL D. COHEN,

        *Petitioner,*

    v.

WILLIAM BARR, in his official capacity as Attorney General of the United States, MICHAEL CARVAJAL, in his official capacity as Director of the Bureau of Prisons, and JAMES PETRUCCI, in his official capacity as Warden of the Federal Correctional Institution, Otisville,

        *Respondents*.

No. 20 Civ. 5614 (AKH)

---

**PETITIONER'S REPLY IN SUPPORT OF PETITIONER'S
<u>EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER</u>**

E. Danya Perry
Samidh Guha
George M. Barchini
PERRY GUHA LLP
35 East 62nd Street
New York, New York 10065
Telephone: (212) 399-8330

Vera Eidelman*
Arianna Demas
Brian Hauss
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad Street, 18th Floor
New York, New York 10004
Telephone: (212) 549-2500

*Attorneys for Petitioner Michael Cohen*

* *Pro hac vice* application forthcoming

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ................................................................................................ 1

II. ARGUMENT ............................................................................................................................ 1

    I. The BOP's Violation of Petitioner's Constitutional Rights is Subject to Judicial Review ............................................................................................. 1

    II. The Court Should Grant Petitioner's Motion for a Temporary Restraining Order ............................................................................................................ 4

        A. Petitioner Is Likely to Succeed on the Merits ............................................. 5

        B. Petitioner Will Suffer Irreparable Harm if Relief is not Granted ............................................................................................................. 8

        C. The Balance of Equities and Public Interest Tip in Petitioner's Favor ................................................................................................ 8

III. CONCLUSION ....................................................................................................................... 9

# TABLE OF AUTHORITIES

**Cases**

*Bell v. Wolfish*,
    441 U.S. 520 (1979)............................................................................................................3

*Borja-Palacio v. United States*,
    No. 96 Cr. 999 (HB) AJP, 1999 WL 816165 (S.D.N.Y. Oct. 13, 1999) ..................................4

*Butler v. Westchester County*,
    No. 94 Civ. 8216 (SHS), 2000 WL 335539 (S.D.N.Y. Mar. 30, 2000) ..................................3

*Davis v. Kelly*,
    160 F.3d 917 (2d Cir.1998)..................................................................................................3

*Fermin-Rodriguez v. Westchester Cty. Jail Med Pers.*,
    191 F. Supp. 2d 358 (S.D.N.Y. 2002)..................................................................................3

*Fernandez-Rodriguez v. Licon-Vitale*,
    No. 20 Civ. 3315 (ER), 2020 WL 3618941 (S.D.N.Y. July 2, 2020).....................................4

*Hendricks v. Coughlin*,
    114 F.3d 390 (2d Cir. 1997).................................................................................................3

*Jiminian v. Nash*,
    245 F.3d 144 (2d Cir. 2001).................................................................................................4

*Martinez-Brooks v. Easter*,
    No. 20 Civ. 00569, 2020 WL 2405350 (D. Conn. May 12, 2020) .........................................4

*Meriwether v. Coughlin*,
    879 F.2d 1037 (2d Cir. 1989)...............................................................................................4

*Pell v. Procunier*,
    417 U.S. 817 (1974).............................................................................................................3

*Procunier v. Martinez*,
    416 U.S. 396 (1974).............................................................................................................2

*Thornburgh v. Abbott*,
    490 U.S. 401 (1989).............................................................................................................2

*Turner v. Safley*,
    482 U.S. 78 (1987)...............................................................................................................2

*United States v. Zehner*,
    No. 19 CR. 485 (AT), 2020 WL 3057759 (S.D.N.Y. June 8, 2020) ......................................... 4

*Webster v. Doe*,
    486 U.S. 592 (1988) .................................................................................................................. 2

**Rules & Statutes**

Fed. R. Civ. P. 65 ............................................................................................................................. 1

U.S. Const. amend. I .............................................................................................................. 1, 2, 5

18 U.S.C. § 3621 .............................................................................................................................. 2

28 U.S.C. § 2241 .......................................................................................................................... 1, 4

Coronavirus Aid, Relief, and Economic Security Act,
    Pub. L. No. 116-136 ................................................................................................................. 8

Petitioner Michael D. Cohen respectfully submits this reply memorandum of law in brief response to Respondents' opposition ("Opposition") to Petitioner's emergency motion for a temporary restraining order ("Motion") (ECF No. 22), and in further support of his Motion, pursuant to 28 U.S.C. § 2241 *et seq*. and Federal Rule of Civil Procedure 65 (ECF No. 5), for a temporary restraining order and a preliminary injunction ordering Respondents to immediately release him to home confinement. Mr. Cohen does not address each of the Respondents' assertions; for those not addressed herein, Petitioner replies upon his initial Motion papers.

## PRELIMINARY STATEMENT

In their Opposition, Respondents argue that (1) the Court does not have jurisdiction to review the decision by the federal Bureau of Prison ("BOP") to remand Mr. Cohen, even if that decision was predicated on a violation of his constitutional rights; and (2) the BOP was justified in remanding Mr. Cohen when he refused to, at least initially, sign the FLM Agreement including the Prior Restraint Provision. Respondents are simply wrong on the law in seeking to evade review, as this Court's jurisdiction in cases such as this is well-established. Respondents are equally misguided in their newly hatched justification for the BOP's actions, ignoring entirely the core issue of the Prior Restraint Provision's constitutionality at the heart of this matter. Respondents offer *no* defense of the Prior Restraint Provision, leaving unchallenged Mr. Cohen's analysis of Respondents' unconstitutional violation of the First Amendment.

For the reasons below, Respondents' arguments are wholly without merit. We urge the court to grant Mr. Cohen's Motion and order his immediate release to home confinement.

## ARGUMENT

**I.   The BOP's Violation of Petitioner's Constitutional Rights is Subject to Judicial Review**

Respondents argue that this Court has no jurisdiction to review the BOP's decision to

remand Mr. Cohen to the Federal Correctional Institution, Otisville ("FCI Otisville")—regardless of the propriety of the BOP's determination. ECF. No. 22 at 12. Respondents are incorrect. To be sure, the BOP is entrusted with discretion to "designate the place of the prisoner's imprisonment" pursuant to 18 U.S.C. § 3621. *See* 18 U.S.C. § 3621(b). However, this discretion is far from unchecked, as Respondents suggest.

While they cite to the bare language of the statute,[1] Respondents point to no authority that would immunize their actions from judicial review. Instead, they cite to a string of boilerplate cases standing for the unremarkable proposition that judicial deference to prison administrators is appropriate in some circumstances. *See* ECF No. 22 at 12-13 (collecting cases).

But no court has held, as Respondents here suggest, that such deference is absolute. To the contrary, the body of case law uniformly affirms the appropriateness of judicial review, and the need for judicial action, in the face of constitutional violations. *See, e.g.*, *Procunier v. Martinez*, 416 U.S. 396, 405-06 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989) ("But a policy of judicial restraint cannot encompass any failure to take cognizance of valid constitutional claims whether arising in a federal or state institution. When a prison regulation or practice offends a fundamental constitutional guarantee, federal courts will discharge their duty to protect constitutional rights.").[2]

---

[1] 18 U.S.C. § 3621 states, in part, that "[n]otwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court," but it is expressly silent with respect to whether it applies to a prisoner's constitutional claims. *See* 18 U.S.C. § 3621(b)(5). Thus, as a threshold matter of law, this court's jurisdiction to review this matter must be presumed. *See, e.g., Webster v. Doe*, 486 U.S. 592, 603 (1988) ("[W]here Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear").

[2] *See also Thornburgh v. Abbott*, 490 U.S. 401, 407, 414-19 (1989) (reaffirming that "prison walls do not form a barrier separating prison inmates from the protections of the Constitution" and applying in-depth judicial review to ensure prison regulations did not unduly infringe on respondents First Amendment rights) (internal quotation marks and alteration omitted); *Turner v.*

2

Contrary to Respondents' assertions, courts specifically are invested with the authority to review the constitutionality of an inmate's transfer. *Davis v. Kelly*, 160 F.3d 917, 920 (2d Cir.1998) ("A prisoner has no liberty interest in remaining at a particular correctional facility, ... but prison authorities may not transfer an inmate in retaliation for the exercise of constitutionally protected rights.)" (citations omitted); *Hendricks v. Coughlin*, 114 F.3d 390, 393-94 (2d Cir. 1997) (officials may not transfer an inmate in retaliation for exercising constitutionally protected rights); *Fermin-Rodriguez v. Westchester Cty. Jail Med Pers.*, 191 F. Supp. 2d 358, 362 n.3 (S.D.N.Y. 2002). "[I]t is well settled that a transfer may not be made solely in retaliation for the exercise of constitutionally protected rights." *Butler v. Westchester County*, No. 94 Civ. 8216 (SHS), 2000 WL 335539, at *6 (S.D.N.Y. Mar. 30, 2000).

In the face of this well-established case law, Respondents tepidly insist that cases "outside the *habeas* context… have no applicability to whether the Court may order an inmate's release in such a situation" and that "[t]hese decisions demonstrate nothing more than that certain courts have held an inmate may bring an action for damages to redress retaliatory transfers, not *habeas* petitions requesting that the Court order their release." ECF No. 22 at 13. This bald assertion—made without citation to authority—also is incorrect, and is particularly puzzling in light of the fact that it immediately follows Respondents' citation to two cases in which the reviewing courts found that they had jurisdiction to review similar BOP decisions in *habeas* cases (one of which

---

*Safley*, 482 U.S. 78, 84 (1987) ("Because prisoners retain [constitutional] rights, '[w]hen a prison regulation or practice offends a fundamental constitutional guarantee, federal courts will discharge their duty to protect constitutional rights.'") (quoting *Procunier*, 416 U.S. at 405-06); *Bell v. Wolfish*, 441 U.S. 520, 545 (1979) (reaffirming that "[t]here is no iron curtain drawn between the Constitution and the prisons of this country" and employing extensive judicial review of a series of jail regulations) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 555-556 (1974)); *Pell v. Procunier*, 417 U.S. 817, 827 (1974) ("Courts cannot, of course, abdicate their constitutional responsibility to delineate and protect fundamental liberties.").

3

was ordered only several weeks ago and was defended by the U.S. Attorney's Office for the Southern District of New York). *See Fernandez-Rodriguez v. Licon-Vitale*, No. 20 Civ. 3315 (ER), 2020 WL 3618941, at *30 (S.D.N.Y. July 2, 2020); *Martinez-Brooks v. Easter*, No. 20 Civ. 00569, 2020 WL 2405350 (D. Conn. May 12, 2020).[3]

In this case, the BOP remanded Mr. Cohen to FCI Otisville in retaliation for his questioning of the FLM Agreement, which would have precluded Mr. Cohen's work on, and publication of, a book about President Donald J. Trump shortly before the upcoming presidential election. Mr. Cohen's remand constitutes adverse action and it was directly in response to his questioning of the Prior Restraint Provision. Although "[p]rison officials have broad discretion to transfer prisoners," "[t]hey may not . . . transfer them solely in retaliation for the exercise of constitutional rights." *Meriwether v. Coughlin*, 879 F.2d 1037, 1045–46 (2d Cir. 1989). This Court has the power to review Mr. Cohen's constitutional claims and, because the BOP violated Mr. Cohen's constitutional rights, this Court should grant Mr. Cohen's Motion and return Mr. Cohen to home confinement.

## II.     The Court Should Grant Petitioner's Motion for a Temporary Restraining Order

Mr. Cohen easily satisfies the standards for a Temporary Restraining Order; Respondents' arguments to the contrary fall flat.

---

[3] Indeed, courts in this district (as well as in other districts) have regularly found that a § 2241 action is the appropriate vehicle to review requests by inmates for release to home confinement. *See United States v. Zehner*, No. 19 CR. 485 (AT), 2020 WL 3057759, at *1-2 (S.D.N.Y. June 8, 2020); *Borja-Palacio v. United States*, No. 96 CR. 999(HB)AJP, 1999 WL 816165, at *5 (S.D.N.Y. Oct. 13, 1999) (Petition seeking resentencing to home confinement was properly construed as a § 2241 petition challenging the execution of the sentence); *see also Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001) ("A motion pursuant to § 2241 generally challenges the execution of a federal prisoner's sentence, including such matters as ... type of detention.") (Sotomayor, J.).

### A. Petitioner Is Likely to Succeed on the Merits

Mr. Cohen seeks immediate release to home confinement because he has been unconstitutionally remanded in retaliation for his protected speech. To that end, Respondents helpfully make a number of concessions in their Opposition.

<u>First</u>, Respondents do not contest Mr. Cohen's legal claim that the Prior Restraint Provision violates the First Amendment of the Constitution. In fact, they offer not one word in defense of that provision or its validity.

<u>Second</u>, Respondents also do not contest that Mr. Cohen has a First Amendment right to write his book, nor that such writing and publication would be foreclosed by the Prior Restraint Provision.

<u>Third</u>, Respondents concede that they took adverse action against Mr. Cohen for questioning the Prior Restraint Provision and its infringement on his First Amendment rights. They acknowledge that the BOP remanded Mr. Cohen when he raised questions about the FLM Agreement—including the Prior Restraint Provision—and in so doing, reversed its prior intention to release Mr. Cohen to home confinement.

Unable to defend their position on the constitutional issue that is at the forefront, Respondents instead raise several factual issues as distraction.

<u>First</u>, they now contend that Mr. Cohen and his counsel were "combative" in questioning the provisions of the FLM Agreement. Pakula Decl. ¶ 16. To support that characterization, Probation Officer Pakula asserts that Mr. Cohen and his counsel questioned the FLM Agreement's various provisions and attempted to negotiate them. Pakula Decl. ¶ 17. As an example, Probation Officer Pakula states that Mr. Cohen posed various hypothetical employment provisions and asked whether they would be approved. Pakula Decl. ¶17(a). Yet it is hard to see how this type of

5

questioning evinces anything other than an attempt by Mr. Cohen to ensure that he understood the conditions of his release, much as he had done with FCI Otisville staff before he was released on furlough. Cohen Decl. ¶¶15, 29. Indeed, it is clear from the internal correspondence attached as Ex. A to Probation Officer Pakula's declaration that Probation Officers expect to discuss the provisions with inmates prior to execution ("I reviewed the list [of FLM provisions] over the phone with the offender and then emailed the document to be signed before we would formally agree to FLM. I think this will help me justify bouncing him out if there's problems. [sic]"). Moreover, this new (false) explanation for the BOP's action is inconsistent with its earlier (false) public statements of justification (*see* TRO Mot. ECF No. 5 at 10, Levine Decl. ¶¶ 29-30), and should not be countenanced.

    <u>Second</u>, Respondents maintain that Probation Officer Pakula drafted the FLM Agreement with the Prior Restraint Provision for Mr. Cohen based on a model for other "high profile inmates." Pakula Decl. ¶ 9-10. Yet, from Probation Officer Pakula's own declaration, it is clear as a threshold matter that it was—at a minimum—at least highly unusual for the United States Probation Office to supervise an inmate on home confinement.[4] Clearly, something extraordinary occurred shortly after Mr. Cohen tweeted about his upcoming book on July 2, 2020, as Mr. Cohen originally was scheduled to have been monitored by a halfway house (as is the typical protocol) until just a few days after that tweet. Cohen Decl. ¶¶ 24-28. And indeed, Probation Officer Pakula had to go out-of-district to find a model. Pakula Decl. ¶¶ 7-9. And even that model appears to have been drafted for just one other particular "high-profile" inmate. Pakula Decl. ¶ 9, Ex. A. All of this screams of something out of the ordinary.

---

[4] Probation Officer Pakula had never done so in his 13 years at the USPO. Pakula Decl. ¶¶ 2, 3.

Third, Respondents argue that Probation Officer Pakula and Jon Gustin, Administrator of the Residential Reentry Management Branch ("RRMB") at BOP, were not aware that Mr. Cohen intended to write a book. Pakula Decl. ¶ 11; Gustin Decl. ¶ 28. And they maintain that the BOP only learned of Mr. Cohen's willingness to execute the FLM Agreement with the constitutionally infirm Prior Restraint Provision after it had already ordered his remand. Gustin Decl. ¶ 26. As set forth above, Mr. Cohen was openly writing his book at FCI Otisville and made numerous public statements that he was doing so. Cohen Decl. ¶¶ 7,9. And, in any event, Probation Officer Pakula acknowledges that he was explicitly told of this fact before he called the BOP to discuss "how it wished to proceed." Pakula Decl. ¶¶ 17(a), 18.

These assertions strain credulity—including the notion that Mr. Cohen or *any* inmate would refuse conditions of home confinement, on pain of being returned to prison. *Yet, more to the point, all of these statements could be true and would have exactly no impact on the issue of the Prior Restraint Provision's unconstitutionality.*

Respondents' Opposition only serves to narrow the question before the Court. To adjudicate Mr. Cohen's Motion, the Court is asked to decide simply whether the Prior Restraint Provision is constitutionally permissible *vel non*; if the Court determines that it is not, then Respondents' action in remanding Mr. Cohen cannot stand.

Respondents' Opposition also holds out the promise for a common-sense resolution of this dispute—something that counsel and Petitioner himself first proposed on July 9, 2020 and have proposed ever since. *See, e.g.*, Cohen Decl. ¶ 42; Perry Decl. ¶ 5. Respondents disclaim any significant rationale for, or thought behind, the inclusion of the Prior Restraint Provision. And Mr. Cohen and his attorneys have stated—both at points during his remand (as Respondents concede) and now—that he would be more than willing to execute the FLM Agreement with the Prior

7

Restraint Provision pending the Court's determination of the issues. Cohen Decl. ¶ 38, 55; Levine Decl. ¶¶ 27-28; Perry Decl. ¶¶ 5, 8.

### B. Petitioner Will Suffer Irreparable Harm if Relief is not Granted

Mr. Cohen has already suffered irreparable harm as a result of Respondents' conduct when the BOP punished him for questioning the imposition of the Prior Restraint Provision in the FLM Agreement. Respondents' proposed solution—to transition Mr. Cohen from COVID-19 quarantine to the general population—only threatens to increase the irreparable harm that Mr. Cohen will suffer.

The BOP, pursuant to the CARES Act, reviewed Mr. Cohen's medical history and released him on furlough precisely to safeguard him given his vulnerability to COVID-19. Without explanation, Respondents now contend that despite this earlier determination, Mr. Cohen should resume life in the same FCI Otisville confinement that it already determined would put him at serious risk of potentially fatal disease. To state the obvious, the COVID-19 threat has hardly disappeared, no vaccine exists, and Mr. Cohen's particular vulnerabilities have not abated. The potential impact of COVID-19 on Mr. Cohen's health—which Respondents acknowledged in releasing him in the first place—is the quintessential example of irreparable harm.

### C. The Balance of Equities and Public Interest Tip in Petitioner's Favor

Respondents are virtually silent on the balance of equities and public interest because there simply are no arguments in their favor. There is no harm whatsoever suffered by Respondents should the TRO be granted, and Mr. Cohen should be released to home confinement as Respondents had planned. Mr. Cohen was out on furlough for some seven weeks without incident prior to his unconstitutional remand, and his status serving his sentence outside FCI Otisville had no bearing on Respondents or the public interest. To the contrary, Mr. Cohen would continue to

suffer greatly by his continued imprisonment as this issue is being decided. Moreover, Respondents assert a fact in their Opposition that, if true, further tips the equities in favor of granting the TRO. Respondents claim that the Prior Restraint Provision was not designed exclusively for Mr. Cohen but instead is applied selectively against certain "high-profile" prisoners as a condition of release. This unregulated and disparate exercise of power by Respondents would presumably continue unchecked absent a grant of the TRO, and in doing so would chill free speech and harm the greater public interest.

## CONCLUSION

For the foregoing reasons, Petitioner's Motion for a temporary restraining order should be granted, and Petitioner should be immediately released to home confinement.

Dated: July 22, 2020　　　　　　　　　　　Respectfully submitted,
　　　　　New York, New York

　　　　　　　　　　　　　　　　　　　　　/s/ *E. Danya Perry*
　　　　　　　　　　　　　　　　　　　　　E. Danya Perry
　　　　　　　　　　　　　　　　　　　　　Samidh Guha
　　　　　　　　　　　　　　　　　　　　　George M. Barchini
　　　　　　　　　　　　　　　　　　　　　PERRY GUHA LLP
　　　　　　　　　　　　　　　　　　　　　35 East 62nd Street
　　　　　　　　　　　　　　　　　　　　　New York, New York 10065
　　　　　　　　　　　　　　　　　　　　　Telephone: (212) 399-8330
　　　　　　　　　　　　　　　　　　　　　Facsimile: (212) 399-8331
　　　　　　　　　　　　　　　　　　　　　Email: dperry@perryguha.com
　　　　　　　　　　　　　　　　　　　　　Email: sguha@perryguha.com
　　　　　　　　　　　　　　　　　　　　　Email: gbarchini@perryguha.com

　　　　　　　　　　　　　　　　　　　　　Vera Eidelman*
　　　　　　　　　　　　　　　　　　　　　Arianna Demas
　　　　　　　　　　　　　　　　　　　　　Brian Hauss
　　　　　　　　　　　　　　　　　　　　　AMERICAN CIVIL LIBERTIES UNION
　　　　　　　　　　　　　　　　　　　　　FOUNDATION
　　　　　　　　　　　　　　　　　　　　　125 Broad Street, 18th Floor
　　　　　　　　　　　　　　　　　　　　　New York, New York 10004
　　　　　　　　　　　　　　　　　　　　　Telephone: (212) 549-2500
　　　　　　　　　　　　　　　　　　　　　Email: veidelman@aclu.org
　　　　　　　　　　　　　　　　　　　　　Email: ademas@aclu.org
　　　　　　　　　　　　　　　　　　　　　Email: bhauss@aclu.org

　　　　　　　　　　　　　　　　　　　　　*Attorneys for Petitioner Michael D. Cohen*

　　　　　　　　　　　　　　　　　　　　　\* *Pro hac vice* application forthcoming

## **CERTIFICATE OF SERVICE**

I, E. Danya Perry, certify that on July 22, 2020, I caused the foregoing Petitioner's Reply in Support of Petitioner's Emergency Motion for a Temporary Restraining Order to be filed with the Clerk of the Court and served upon counsel via email and the CM/ECF system.

/s/ *E. Danya Perry*
E. Danya Perry